## JASPER M. TERRY *et al.*

*v.*

## THE TRUSTEES OF HAMILTON PRIMARY SCHOOL.

1   INJUNCTION—*assessment of damages on dissolution.* Where the only prayer of a bill is for an injunction, and a temporary injunction is granted, which, upon the coming in of the answer, is dissolved, but no decree rendered dismissing the bill or disposing of the case upon its merits, it is improper to assess damages.

2.   CERTIFICATE OF EVIDENCE—*recital in, can not be treated as a decree.* A recital in a certificate of evidence, that a bill was dismissed, is not a decree, nor can it be treated as such, and this court will not act on it.

APPEAL from the Circuit Court of Jersey county; the Hon. CYRUS EPLER, Judge, presiding.

Messrs. WARREN & POGUE, for the appellants.

Mr. O. B. HAMILTON, and Messrs. HODGES & BURR, for the appellee.

Mr. CHIEF JUSTICE WALKER delivered the opinion of the Court:

The bill alleges that one Silas Hamilton bequeathed $4000 for the purpose of establishing and maintaining a primary school, one half to be used in erecting a building suitable for

a school and a place of public worship, and the balance to constitute a fund for the support of a teacher. The executor named in his will procured a lot of ground, and erected a building thereon. Subsequently, the school was incorporated by act of the General Assembly, and the act was amended in 1869, and fixed the limits of the district at three miles square. The bill also alleges, that the board of trustees created by the act of incorporation have maintained a school, and are still exercising their powers and authority under the act of incorporation; that they had power conferred upon them to assess and collect taxes to pay a teacher, and to repair the school building, and to erect new school buildings, the tax not to exceed two per cent per annum on the taxable property of the district.

It is alleged that complainants are inhabitants and property holders of the district, and entitled to the benefits of the trust; that the building erected by the executor is sufficiently large to accommodate all persons entitled to the benefits of the endowment, with the necessary repairs, and would be safe, suitable and convenient for many years to come; that the trustees, without legal authority, ordered an election by the voters of the district, to authorize them to issue bonds of the district to raise money to build a new house, which resulted in favor of issuing bonds; that the board of trustees had selected the site of the old school house on which to erect the new building, and had adopted a plan and specifications of an architect for the building of a house, at an estimated cost of $8590, with 5 per cent commission to the architect; that the trustees were about to issue the bonds, and had commenced tearing down and destroying the old house; that the highest legal rate of taxation on the property of the district would not yield more than one-fourth of the sum required to build the new house.

The bill prays an injunction.

A temporary injunction was granted restraining the trustees from tearing down the house, and from issuing bonds. An answer was filed by the trustees. It denies the house was safe. They say the election was held, resulting in favor of issuing bonds. They admit that they had adopted plans, but deny

they had agreed to pay the architect 5 per cent on the estimates of the cost of the building; that they had decided to erect a new school building on the site of the old one. They deny that they intend to issue bonds, as charged. They admit that they had commenced to tear down the old building, but claim authority to do so under the law. A replication was filed.

A motion was made, on the coming in of the answer, to dissolve the injunction. The motion was heard at chambers on the 27th of June, 1873, when the injunction was dissolved, and defendants filed suggestions of damages by reason of the wrongful suing out of the injunction. They claim $300 for attorneys' fees, $100 for procuring affidavits, $100 for expense in attending on the hearing of the motion, and $1000 damages for delay in delivering brick for the house.

At the next term of the court, a hearing was had on the assessment of damages, when the court found and decreed the payment of $200 for attorneys' fees, $25 for expense in procuring affidavits to be read on the motion to dissolve the injunction, and $500 for damages sustained by delay in the fulfillment of a contract to deliver brick for the new building. From that order an appeal is prosecuted to this court.

The fee of $200 for arguing a motion for the dissolution of the injunction seems too large. It is not supported by the evidence. We infer that the fee embraces, as it should, no other services, as the expense of preparing the affidavits read on the hearing was allowed in another item. The evidence of one witness was, that $100 would be a reasonable fee, and that of the other that $150 would not be unreasonable, if the attorney prepared all of the papers, and went to Jacksonville to argue the motion. It does not appear the attorney did prepare the papers and go to that place. There is no evidence as to what contract was made with the attorney. It may be he agreed for half the sum fixed by either witness.

The contract, if it may be termed such, with Bettis, was, that he was to make the brick, and the trustees were to have the option to find everything and pay him $2 per thousand, or

he find everything and they pay him $8 per thousand. The trustees did not determine which proposition they would accept, nor did Bettis do anything towards fulfilling his contract, but to rent a yard. He employed no hands or did anything else towards making the brick. The agreement was not reduced to writing, and seems to have been but a loose and rather indefinite understanding that Bettis was to make the brick, but no time was fixed when he should commence, when they were to be delivered, or how and in what quantities they were to be delivered; nor were the trustees enjoined from making brick, or from having others to do so, and hence they could still have gone on with their contract. Again, there is no evidence that the trustees, acting under the injunction, directed him not to make the brick; and if they had, we are not prepared to hold that they would have been warranted in their action. Bettis was not enjoined, and could have proceeded to fulfill his contract until stopped by the trustees; nor does it appear that Bettis is pursuing or threatening a remedy for any such loss.

There is no definite evidence that the brick could or would have been made at all, and if they could, that it would have been done any sooner without the injunction, than by its being issued. The evidence is too loose and indefinite as to the terms of the agreement, to sustain the finding on this branch of the case.

Again, it was improper to assess damages until there was a final hearing, and it was determined whether the relief sought should be granted. The only prayer of the bill was for an injunction, and although, by affidavits and other proofs, it might appear to be eminently proper to dissolve the injunction temporarily granted, still, on a final hearing, evidence might have been adduced requiring that there should be a perpetual injunction. We find no decree in the record dismissing or otherwise disposing of the bill; nor do we find that the case was ready for a hearing on the merits. We can not act on a mere recital in the certificate of evidence, that the bill was dismissed. That is not a decree, nor can it be treated as such. It has none of the elements of a decree, and can not be so

regarded.    Hence we refrain from discussing the merits of the case.

The decree of the court below in assessing the damages is reversed and the cause remanded.

*Decree reversed.*