DAVID S. DEMPSTER, Appellant, *vs.* KILLIAN V. R. LAN-
SINGH, Appellee.

*Opinion filed April 23, 1908—Rehearing denied June 3, 1908.*

1. INJUNCTION—*when suggestions of damages on a dissolution
may be heard before final hearing.* Upon the dissolution of a tem-
porary injunction, which is merely ancillary to the main cause, the
court may hear suggestions of damages and allow the same before
the final hearing on the bill.

2. SAME—*when hearing of suggestions of damages need not be
referred to master.* The hearing of suggestions of damages on dis-
solution of a temporary injunction need not be referred to the mas-
ter in chancery, where the damages suggested are mere items of
expense incurred in connection with the dissolution, and which,
though several in number, are readily the subject of proof and in-
volve no injury to property rights and no consequential damages.

3. SAME—*what does not defeat right to damages on dissolution
of injunction.* The right to damages upon dissolution of a tempo-
rary injunction restraining the defendant from selling, transferring
or encumbering certain shares of stock is not defeated by the fact
that after the injunction was dissolved the parties voluntarily made
a stipulation that the stock should be left, where it then was, in
the possession of a certain trust company.

4. SAME—*when fees for defending suit generally cannot be al-
lowed as damages on dissolution.* Upon dissolution of a temporary
injunction, which is merely ancillary to the principal relief sought,
attorney's fees for defending the suit generally cannot be allowed
as damages; and the fact that defendant's attorneys have charged,
and he has paid, a certain amount to his attorneys is not conclu-
sive of his right to have such amount assessed as damages.

APPEAL from the Appellate Court for the First Dis-
trict;—heard in that court on appeal from the Circuit Court
of Cook county; the Hon. E. F. DUNNE, Judge, presiding.

By the original bill filed in this case the ownership of
455 shares of stock in the Rosehill Cemetery Company is
sought to be determined. This company was organized in
1859 and its property is located in Cook county. For a
detailed history of previous litigation which has arisen be-

tween various parties concerning the company and the own-
ership of stock therein we refer to the statement made by
this court in the case of *Higgins* v. *Lansingh,* 154 Ill. 301,
and to the case of *Rosehill Cemetery Co.* v. *Dempster,* 223
id. 567.

The original bill in this case was filed in the circuit court
of Cook county April 7, 1902, and after briefly reciting the
history of the Rosehill Cemetery Company it alleged that
in 1882 certain stockholders, believing that the business of
the company was being managed to the injury of stockhold-
ers, desired to take the management out of the control of
the creditors, who had had the management of the com-
pany's affairs for many years; that a number of such stock-
holders entered into an agreement whereby appellee and one
Kean were made trustees for the other parties to the agree-
ment to effect a settlement of the affairs of the company;
that appellee entered upon the discharge of the duties as
trustee, and in 1882 commenced legal proceedings to com-
pel an accounting and a settlement by the creditors; that
such proceedings remained pending in the courts of this
State until August 4, 1896; (*Higgins* v. *Lansingh, supra;*)
that large costs and expenses were incurred, which were
contributed by appellant and other parties to the agreement,
but that some of the parties neglected and refused to con-
tribute their share, and that appellee unlawfully withholds
an accounting of such costs and expenses; that he should
account, and show which of the said parties have failed to
contribute, the stock such parties hold and the amount per
share due on said stock; which of said parties did so con-
tribute, the stock they held and the amount per share they
contributed; which of said parties, if any, have contributed
more than their *pro rata* share, the stock they held and the
amount per share due them as rebate, if any. The bill fur-
ther alleges that while acting as trustee appellee caused to
be assigned and transferred to himself the full legal interest
to 455 shares of the original issue of the stock of said com-

pany, which he then held and had been theretofore holding as trustee, to be held in trust for the use and benefit of all of the other parties to said agreement; that such shares of stock were wrongfully claimed by appellee as his individual property, were not distributed by him, but were permitted to remain in the hands of appellee until an accounting might be had. The bill prays for an accounting from the appellee, and that he might be decreed to turn over to the appellant whatever stock and money should be found due him on the accounting. The bill further alleges, on information and belief, that appellee has little or no property aside from the stock and dividends in controversy, and is in danger of drifting into insolvency or of disposing of said shares and dividends; that he spends a large part of his time out of Illinois, and appellant therefore prays that appellee be enjoined from selling, assigning, voting, transferring, delivering or encumbering, or in any way or manner disposing of or intermeddling with, said stock and dividends, and from collecting any dividends that might thereafter be declared on said stock, and from making any assignment of his property or confessing any judgment for the purpose of enabling other persons to obtain his property or liens thereon. The bill also prays for a receiver of the stock and dividends, and of all the estate and property of appellee, both real and personal.

On the same day the bill was filed, April 7, 1902, and without notice, an injunction was granted in accordance with the prayer of the bill, upon a bond of $500, and a receiver was appointed for all the property and estate of appellee. Summons and a writ of injunction were served on appellee, and on June 3, 1902, he filed his answer to the bill, and on the same day entered his motion to dissolve the injunction and discharge the receiver. This motion was continued from time to time until some time in July, 1902, when it was taken up by the court, and after two days spent in an oral hearing, it was by the court, of its own motion,

referred to the master on July 18, 1902. The order of reference was as follows: "This cause coming on to be heard on the motion of the defendant, Killian V. R. Lansingh, to dissolve the injunction and discharge the receiver herein, and the court having heard the arguments of counsel, and it appearing to the court that the facts are not fully before this court, it is ordered that said cause be and the same is hereby referred to Stillman B. Jamieson, one of the masters in chancery of this court, to take testimony and report to the court his conclusions of fact and of law on the following propositions." Twenty-six different questions of law and fact followed. The twenty-fourth of these questions was "whether or not delay or lapse of time has precluded the complainant from relief by way of temporary injunction." The twenty-fifth was: "Under the facts as found, is the defendant, Killian V. R. Lansingh, entitled to have the injunction entered herein dissolved?" The twenty-sixth was: "Under the facts as found, is the defendant, Killian V. R. Lansingh, entitled to have the receiver heretofore appointed discharged?"

After many hearings the master filed his report on June 13, 1903. The report sets forth the order of reference and the twenty-six separate findings of law and fact which the master was directed to make. His conclusions are given *seriatim* on the interrogatories, the answer to the twenty-fourth being, "that Dempster has been guilty of *laches* to such an extent as to bar him from the relief asked for, without a full and complete hearing." In response to the twenty-fifth interrogatory the master states "that the issuing of the preliminary injunction *ex parte* and without notice was ill-advised," and said master finds that said temporary injunction should not be continued in force, but, on the contrary, should be dissolved. In answer to the twenty-sixth interrogatory the master found that appellee was not insolvent, but that he had ample means to enable him to pay whatever amount might be found due from him in any accounting

between the parties, and he recommended that the receiver be discharged.

Exceptions were filed to the master's report, which were overruled, and on September 15, 1903, the court sustained the report and directed that a decree be entered dissolving the injunction and discharging the receiver. This was done on September 18, 1903, and leave was given appellee to file suggestions of damages within ten days. The suggestions of damages were filed by appellee September 26, 1903, and were set for hearing on the next trial calendar. The suggestions of damages aggregated $19,601.85, and contained the following items: Attorneys' fees, $16,000; master's fees, $1518.25; for transcripts of testimony and arguments heard before the master, $1266.70; stenographer's charges for work done in and about the procuring of the dissolution of the injunction, $202.40; for the services of an expert book-keeper in an examination of the books of the company and making a schedule of the same to be used in evidence before the master, $50; witness fees, telegrams and other expenses in and about procuring the dissolution of the injunction, $64.50; and $500 for interest on money borrowed to enable appellee to live and pay the running expenses of this litigation, the wrongful suing out of the injunction having deprived appellee of his entire income and tied up all his property.

On October 12, 1904, the suggestions of damages came on to a hearing, and appellant moved to postpone the hearing until the main cause before the court was finally disposed of. The court overruled this motion, and appellant then moved that the suggestions of damages be referred to the master to take proof and report his conclusions of law and fact. This motion was also overruled. The hearing proceeded before the chancellor, and on November 5, 1904, a decree was entered by the court allowing appellee damages in the sum of $15,666.32, as follows: Attorneys' fees, $14,800; master's fees, $759.12; for stenographic work

234—25

and expert book-keeper's charges, $107.20. The decree finds that appellee employed solicitors for the purpose of securing a dissolution of the injunction; that such solicitors, two in number, were present at the hearing before the court and master; that they were actually in the court, on the hearing, at least fifty days, and that they were occupied outside, in preparation for the hearings, at least one hundred and forty days; that all of the services of said solicitors were necessarily rendered in procuring a dissolution of the injunction; that each solicitor rendered a bill for the sum of $8000 for his services, and that appellee paid both of these bills, amounting to the sum of $16,000; that such sum is and was a usual, customary and reasonable charge for such services by reputable attorneys in practice in Cook county; but although the chancellor found that all of said services were necessarily rendered in procuring a dissolution of the injunction, yet "being of the opinion that upon the final hearing of the cause, if any, the evidence taken before the master may be of some value," although in his opinion, also, "when the case is finally heard the solicitors for said Lansingh will have to do the same work they have done before," he deducted $1200 from the $16,000 actually shown to have been paid by the appellee for said services. For the same reason he deducted one-half of the amount proven to have been paid by appellee for master's fees and for stenographic and book-keeping expenses. The $1266.70 paid for stenographer's fees for transcripts of the testimony and arguments before the master was found to be covered by a stipulation by which this item of costs was to abide the final outcome of the suit, and was therefore disallowed. The $500 claimed for interest on money borrowed was disallowed.

From this decree appellant prosecuted an appeal to the Appellate Court for the First District, and upon such appeal appellee assigned cross-errors, complaining of the deductions and disallowances made by the court of various items

claimed in his suggestions of damages. In the Appellate Court the decree of the circuit court was affirmed, and by his further appeal appellant brings the record to this court for review.

CANNON & POAGE, for appellant.

ROBERT F. PETTIBONE, HENRY W. WOLSELEY, and WILLIAM S. FREEMAN, for appellee.

Per CURIAM: It is contended by appellant that it was improper for the court to hear suggestions of damages until the cause was before the court on final hearing and until it was determined whether the relief sought should be granted. In support of this position *Terry* v. *Hamilton Primary School,* 72 Ill. 476, is cited and relied on. That case is not like the one at bar. There the sole object of the proceeding was to obtain a perpetual injunction, and a temporary injunction was granted to protect the interests of the parties until the cause could be heard on the bill and answer. Here the bill was for a different purpose, and the temporary injunction was merely ancillary to the main cause. In such a case the statute is plain that the court may hear suggestions of damages and allow the same before final hearing. Section 12 of chapter 69 of Hurd's Statutes of 1905 provides, that "in all cases where an injunction is dissolved by any court of chancery in this State, the court, after dissolving such injunction, *and before finally disposing of the suit,* upon the party claiming damages by reason of such injunction, suggesting, in writing, the nature and amount thereof, shall hear evidence and assess such damages as the nature of the case may require, and to equity appertain, to the party damnified by such injunction, and may award execution to collect the same." By the above provision the power of the court to award such damages is beyond question, and the

time for hearing such question is entirely within the discretion of the chancellor, with the express limitation that it must be "after dissolving such injunction and before finally disposing of the suit." The court committed no error in hearing suggestions of damages in this case. *Darst* v. *Gale,* 83 Ill. 136; *Wing* v. *Dodge,* 80 id. 564; *Keith* v. *Henkleman,* 173 id. 137.

It is also insisted by appellant that the hearing on the suggestions of damages involved an intricate account and should have been referred to the master. We do not agree with appellant in this. The damages suggested included no injury to property rights and no consequential damages other than mere items of expenses incurred in connection with the motion to dissolve the injunction. The items were several in number, it is true, but each was readily the subject of proof. Nothing of an intricate nature was embraced within the items and no reference to the master was necessary.

After the court had announced its decision that the injunction must be dissolved, and when the decree had been prepared in accordance with the decision of the court and presented for approval, counsel for appellant suggested to the court that appellee was left in a position that he might remove the stock out of the jurisdiction of the court, and that as he had little or no other property, if appellant should finally procure a decree against him he might have nothing in the jurisdiction of the court that could be reached to satisfy the decree. Counsel for appellee replied that his client had no intention of removing his stock out of the State; that it was then in the possession of the Chicago Title and Trust Company and that appellee intended to let it remain there. The court thereupon suggested that if that was the case the parties might make a stipulation to that effect, which they voluntarily did. Appellant now contends that on account of that stipulation the stock was not released to appellee's control by the dissolution of the injunction and that

no damages should be assessed on account of such dissolution. This contention is without merit. The dissolution was not dependent upon the stipulation being made. Before the stipulation had been mentioned the court announced its decision dissolving the injunction, and the stipulation was made by the voluntary action of the parties and not by any order of the court. By the dissolution of the injunction the beneficial use of the stock was released to appellee, and the agreement to leave it where it then was, with the Chicago Title and Trust Company, was not entitled to be considered in the assessment of the damages.

It is also contended that Mr. Pettibone, one of counsel for appellee, was a stockholder in the Rosehill Cemetery Company and was made a party to the suit, and being interested in the litigation was not entitled to fees on the basis of counsel who is not a party to the litigation. It is true Pettibone is the owner of a few shares of stock of the corporation, but he was not a party to the suit when he rendered the services for which it was asked fees be assessed as damages, and his stock was not affected by the injunction. By an amendment about a year after the dissolution of the injunction he was made a party defendant. That fact, however, should have no influence in determining the fees he was entitled to charge for his services as counsel for appellee in securing the dissolution of the injunction.

The decree of the circuit court is supported by the law and the evidence in every respect except as to the amount allowed as solicitors' fees. In this respect we think the damages assessed excessive. The decree finds appellee's counsel rendered bills for $8000 each and that appellee paid them that amount, and that this was a usual, customary and reasonable charge for such services by reputable attorneys practicing in Cook county. It further appears from the decree that because, in the opinion of the chancellor, the evidence taken before the master, or some of it, would be of value on the final hearing of the case, he deducted $1200

from said sum of $16,000 and allowed $14,800 as solicitors' fees. The law is, that where the injunction is ancillary to the principal relief sought, fees for defending the suit generally should not be assessed as damages upon the dissolution of the injunction. (*Lambert* v. *Alcorn,* 144 Ill. 313; *Walker* v. *Pritchard,* 135 id. 103.) The fact that appellee's counsel had charged, and he had paid them, the amount claimed is not conclusive of his right to have that sum taxed as damages. In *Jevne & Almini* v. *Osgood,* 57 Ill. 340, the rule was stated as follows: "But a reasonable and fair compensation should be allowed to defendant for money actually paid to an attorney or a liability fairly and honestly incurred to pay an attorney to procure the dissolution,—such a fee, only, as he would pay if he had no hope of having it reimbursed." While it is true the testimony offered by the appellee as to the value of the services rendered by his solicitors supported the finding and decree of the chancellor and appellant offered no testimony on that subject, it is also true that the testimony does not distinguish as to the value of the services necessarily rendered in the dissolution of the injunction and the services rendered that were necessary for the general defense of the suit. The chancellor reduced the amount claimed by appellee because in his opinion some of the evidence taken and the services rendered were necessary to and would be availed of on the final hearing of the case on its merits, but our examination of this record leads us to conclude that the reduction made was insufficient.

For the reason that the allowance of solicitors' fees was excessive the decree of the circuit court is reversed and the cause remanded.                    *Reversed and remanded.*