(No. 33044.— )

FOREST PRESERVE DISTRICT OF COOK COUNTY, Appellee, *vs.* ANTON WIKE *et al.*—(LESTER J. MORAND *et al.,* Appellants.)

*Opinion filed May 24, 1954.*

CUMMINGS & WYMAN, and PHILIP CONLEY, both of Chicago, (DANIEL P. NAGLE, of counsel,) for appellants.

OLIVER H. BOVIK, PAUL B. N. LIND, and JOSEPH E. TAGLIA, all of Chicago, (VIRGIL C. LUTRELL, and JOHN G. POUST, of counsel,) for appellee.

Mr. JUSTICE FULTON delivered the opinion of the court:

This is an appeal by Lester J. Morand and Harold Engstrom, as trustees, seeking to review a judgment of the circuit court of Cook County authorizing appellee to take from the appellants certain premises located in the city of Chicago, on payment of judgments rendered in condemnation.

The Forest Preserve District filed its petition to condemn on October 13, 1950. Lester J. Morand and Harold Engstrom, the owners, as trustees, of premises designated as parcel No. 5, filed a traverse in the nature of an amended

motion to dismiss. Gus Neubauer, the owner of parcel No. 8, also filed a traverse.

In their motion to dismiss Morand and Engstrom presented the following points:

(a) That their land is not a natural forest; does not connect such forests; could not become part of a unit area connecting such preserves with forested ways or links;

(b) It is not situated along a watercourse; could not be used for a forested way around such preserve;

(c) That the district already has more than sufficient land of an unforested nature for parking driveways and other improvements and facilities;

(d) That the taking of defendants' land would constitute an abuse of power by the Forest Preserve District.

The Forest Preserve District, hereinafter termed the "district," has in its statement suggested additional facts as follows:

The entire area referred to in the briefs is located on the southwest side in the city of Chicago; that part located south of Eighty-fifth Street is a wooded forest preserve of 162 acres, known as "Dan Ryan Woods," and has been owned by the district since the early 1920's. Hinkamp and Company's Forest Preserve Subdivision, in which appellant's property is located, was subdivided in 1926. It is and has always been vacant and unimproved, and is not forested except for some scattered trees. The whole subdivision adjoins Dan Ryan Woods on the north and extends from Eighty-fifth Street to Eighty-second Street.

Prior to the filing of the instant suit, petitioner had acquired and owned:

(a) All of the area between Eighty-third and Eighty-fifth streets (40 acres);

(b) Seventy-two lots (out of a total of 114); the remaining 42 lots being those involved in the original petition in this case between Eighty-second and Eighty-third streets;

(c) An unsubdivided tract of a little over three acres between Eighty-second Street and the B. & O. C. T. railroad tracks.

To the north of Dan Ryan Woods, in the area located between Eighty-third Street on the north, Eighty-fifth Street on the south, the B. & O. right-of-way on the east, and Western Avenue on the west, are nine subdivided city blocks of Hinkamp's Forest Preserve Subdivision (including block 13.) This land is unforested. It is improved with sewers, water, sidewalks, curbs and paved streets. This land is 40 acres in area and in some parts of the testimony is described as parcel "B."

Parcel "C" is the area bounded on the north by a branch of the B. & O. right-of-way, on the south by Eighty-third Street, on the east by the B. & O. right-of-way, and on the west by Western Avenue. This vacant land is subdivided into city lots and blocks. It also contains sewers, water, sidewalks, curbs and paved streets. Parcel "C" contains 18 acres of subdivided land. Most of these facts were submitted by stipulation.

The appellants, Morand and Engstrom, are the owners, as trustees, of three lots, described as lots 14, 15 and 16 in block 9, Hinkamp's Forest Preserve Subdivision. They are located at the northeast corner of Eighty-third Street and Western Avenue in parcel "C." They are the only property owners who resist the action of the district on appeal, and the owners of parcel No. 5. Neubauer, owner of parcel 8, resisted the action of the district in the trial court but did not join in this appeal.

Appellants' motions to dismiss the petition for condemnation were denied. The case then proceeded to trial on the value of the land taken and to determine the appellants' damages for the taking of the land in question.

The general superintendent of the Forest Preserve District testified that it was the intention of the district to plant forests on parcels "B" and "C," install toilet facilities,

picnic tables, etc.; that the present wooded section south of Eighty-seventh Street is overused and that the district proposes to acquire the land in question to develop it, so that the forest south of Eighty-seventh Street may be protected; provide facilities that will protect the existing forest; that the land north of Eighty-fifth Street will grow trees better, and afford better meadows because of the soil depth.

On the trial of the issue to determine the value of their land, Morand and Engstrom asserted that the highest and best use of their land at the northeast corner of Eighty-third Street and Western Avenue was for a gasoline filling station. The district produced evidence of sales of other land in the area, and introduced over the objections of the appellants an ordinance of the city of Chicago, which required "frontage consents" for the establishment of a gasoline filling station. The jury returned a verdict on parcel 5 (Morand and Engstrom's property) in the sum of $7550.

Plats and maps covering the entire area have been filed in the cause by stipulation and there is no dispute between the parties as to the nature of the land, the utilities and improvements installed on the property and the character of the surrounding premises.

The three lots in controversy have a frontage of 86 feet on Western Avenue and 100 feet on Eighty-third Street. The testimony of appellants' witnesses revealed that the lots are ideally suited for a gasoline filling station. It is conceded that parcels "B" and "C" contain no trees. Witness Sauers, general superintendent of the Forest Preserve District, testified that it was the intention of the district to plant forests on parcels "B" and "C," install toilet facilities, picnic tables, etc. He further testified that the wooded section south of Eighty-seventh Street is overused and that the district proposes to develop it with facilities that will protect the existing forest.

The appellants maintain that the trial court erred in holding that their land was such as to render it subject to condemnation by the Forest Preserve District and that the taking of the defendants' land was an abuse of power by the district.

This court has frequently held that the statutes granting the power of eminent domain must be strictly construed, and that the court will not tolerate an abuse of such power. *Town of Kingston* v. *Anderson,* 300 Ill. 577; *Gillette* v. *Aurora Railways Co.* 228 Ill. 261; *City of Chicago* v. *Vaccarro,* 408 Ill. 587.

It was stipulated by the parties that the only two issues involved at the hearing on the traverse or motion to dismiss were (1) that the land in question is not such land as the statute authorizes the district to acquire; and (2) that taking this land is not necessary and is an abuse of power.

The Forest Preserve District Act, which was passed for the express purpose of providing for the creation and management of forest preserve districts, was passed in 1913, but has many times been amended. (Ill. Rev. Stat. 1953, chap. 57½, par. 1, *et seq.*) Section 5 of said act was amended in 1929, and again in 1947. As amended its final sentence reads as follows: "Unforested lands adjacent to forest preserves may also be acquired to provide for extension of roads and forested ways around and by such preserves and for parking space for automobiles and other facilities not requiring forested areas but incidental to the use and protection thereof." Primarily, the power to condemn in the instant case stems from the powers provided in this clause.

The testimony of the petitioner is to the effect that the lands sought to be acquired are necessary as incidental to the use and protection of the actual forested areas.

Charles G. Sauers, the petitioner's superintendent since 1920, testified that the forest preserve known as Dan Ryan Woods had been used much more than any other forest

preserve areas, and had been greatly overused to the damage of the existing trees. He further testified that the district was not able to handle the public demand for facilities in that area and that the forest could not withstand the use it was getting. He further testified that the plan of development of the area the district planned to acquire included a great meadow with trees and shrubs, together with parking areas, shelters, comfort stations, water supplies, etc., for the use of the public to remedy a situation which threatened the destruction of the existing forests.

Further similar evidence was introduced by the petitioner to the effect that the land in the woods was becoming so trodden that additional lands were necessary to take some of the wear and tear off of the forested area.

James E. Poling, in behalf of the appellants, testified that parcels "B" and "C" contained no trees; that the peak use of Dan Ryan Woods on the principal holidays, such as the Fourth of July and Labor Day, was somewhere between 8,000 to 10,000 people; that there were facilities for parking about 850 or 900 cars. He also testified that there was no water on said parcels "B" and "C"—that is, water in the nature of creeks, lakes or ponds.

On this issue, outside of the witness Poling, the appellants have offered little or no further testimony to meet the proof offered on the part of the district. They have very strenuously argued that it would be unjust and unlawful to take the lots of appellants for the purposes suggested by the district, which they contend are not authorized by the legislative enactment, and that its asserted right of eminent domain as to defendants' lots was not necessary and proper.

It is insisted by appellants that the Illinois authorities support their contention. In their reply brief they set forth quite fully the rule as presented in the case of *City of Chicago* v. *Vaccarro,* 408 Ill. 587, at page 596: "This court has held in an unbroken line of decisions that where the

right to condemn exists, and the property is subject to the right of eminent domain and is being condemned for a public use, and the right to condemn is not being abused, courts cannot deny the right to condemn on the ground that the exercise of the power is unnecessary or not expedient, as the determination of that question devolves upon the legislative branch of the government and is a question which the judicial branch of the government cannot determine; and that in such cases courts may only rightfully determine whether a petitioner has the power to exercise the right of eminent domain, whether the property is subject to the right of eminent domain and is being taken for a public use, whether the power is being abused, as by the taking of an excessive amount of property, and other kindred questions which do not involve a determination of the necessity or expediency of the taking of the lands sought to be condemned." And, after supporting petitioner's contention that the decision of the petitioner as to the necessity for exercising the right will be conclusive in the absence of a clear abuse of the power, the court concludes, at page 597: "An abuse of such power, however, will not be tolerated, and if no necessity for its exercise exists, or if it appears that the quantity of the property sought to be taken is grossly in excess of the amount necessary for the public use, the court will not permit the land to be taken."

We are in agreement with what was said in the *Vaccarro case,* but, with the proof introduced by the district as to the needs for the condemned lots, not only for increased facilities but for protection of the overused forest areas and to meet the increased demands for the public use and with no effective proof on behalf of appellants to meet this issue, we find that the district has made out a case for condemnation, and further, that the statute as amended in 1947 is broad enough to permit petitioner to

include the land described in its petition including the lots owned by appellants.

The appellants have urged that the court erred in making prejudicial statements in the jury's presence. They insist that some of these statements reflected on the legal profession and prejudiced the jury against appellants' attorneys. One statement made by the court to the jury on the opening of the trial, after instructing the jury not to talk about the case among themselves, commented that there were smart young men entering the elevator with jurors who were talking for the benefit of the jurors to overhear and that they might say something which would influence a juror. Again, the court in dismissing the jury for the day commented upon a lawyer who would be in the case the next morning. At the close of his remarks, the court stated: "There are tricks to all trades and the legal profession is a trade of all tricks." Counsel for the appellants complain that these remarks were directed towards the appellants' lawyers and were prejudicial in themselves. In other remarks the court talked to the jury and related his own experience and knowledge with the area in and about the premises to be condemned in a manner which the appellants claim was also prejudicial.

It appears to this court that there were instances during the trial when the court might have made remarks which were entirely outside the necessary conduct of the cause, but they do not appear to be more prejudicial to one side than the other. We have often said that the trial court has a wide discretion in the conduct of the trial but it must not invade the province of the jury by making comments or insinuations suggesting the belief or disbelief in the integrity of the lawyers conducting the trial. While we do not commend the extraneous comment on the part of the presiding judge, none of the remarks were objected to, nor was exception taken during the trial, nor any

motion made to strike out such remarks, as counsel properly should have done. (*Forest Preserve Dist.* v. *Chicago Title and Trust Co.* 351 Ill. 48.) We feel that counsel for the appellants have attempted to place a strained construction and interpretation upon the unnecessary remarks of the presiding judge made during the course of the trial. We cannot agree that the conduct of the court constituted a hostile attitude towards the attorneys for the appellants or that it was prejudicial to one side or the other.

We do not regard the introduction of an ordinance of the city of Chicago requiring frontage consents in establishing a gasoline filling station to be reversible error, because any evidence which affected the value of the property to be condemned should properly be admitted.

In a complete review of this record, we find nothing which indicates that this court should disturb the verdict of the jury in this condemnation case.

For the reasons above stated, the judgment of the circuit court of Cook County is affirmed.

*Judgment affirmed.*