JAMES L. HEAVEY, Plaintiff and Counterdefendant-Appellee, v. JOHN B. EHRET et al., Defendants and Counterplaintiffs-Appellants.

First District (2nd Division)   No. 87—652

Opinion filed February 2, 1988.—Rehearing denied March 8, 1988.

John B. Ehret, of Olympia Fields, appellant *pro se.*

Arnstein, Gluck, Lehr & Milligan, of Chicago (Arthur L. Klein, Eugene J. Kelley, and Paul E. Starkman, of counsel), for appellee.

JUSTICE STAMOS delivered the opinion of the court:

This is an appeal by a manufacturer's representative[1] (Ehret) from the judgment and post-trial orders entered by the circuit court of Cook County after a jury trial during proceedings in which Ehret was sued for commissions by plaintiff, James L. Heavey (Heavey), who was a former sales employee of Ehret, and in which Heavey was countersued by Ehret.

The record as presented to this court contains no document purporting to be a judgment on the jury's verdict against Ehret or to set forth the contents of such a judgment. Extraordinarily, Ehret's briefs themselves acknowledge the apparent lack of such a judgment, while Heavey's briefs are largely silent on the question. The record on appeal contains only a signed verdict, orders denying Ehret's post-trial motion for judgment notwithstanding the verdict and for a new trial and denying Ehret's motion for remittitur, an order setting an appeal bond, and an appeal bond.

■■ This court has no jurisdiction to consider an appeal from a nonexistent judgment. (*People v. Cook* (1981), 94 Ill. App. 3d 73, 74-75, 418 N.E.2d 457, 459.) A jury verdict or trial judge's finding alone is not a judgment. (*Harrison v. Singleton* (1839), 3 Ill. (2 Scam.) 21; *Wilburn v. City of Chicago* (1984), 123 Ill. App. 3d 744, 747, 463 N.E.2d 789, 791; *Mendelson v. Lillard* (1980), 83 Ill. App. 3d 1088, 1092, 404 N.E.2d 964, 968; *Oppenheimer v. U.S. Carbon & Ribbon Manufacturing Co.* (1963), 43 Ill. App. 2d 451, 457, 193 N.E.2d 868, 871, *appeal denied* (1964), 29 Ill. 2d 625; *Sager v. Steele* (1957), 13 Ill. App. 2d 570, 142 N.E.2d 503 (abstract of opinion); *Mid City Wholesale Grocers, Inc. v. Bischoff* (1945), 327 Ill. App. 268, 270, 64 N.E.2d 234, 235; *LeMenager v. Northwestern Barb Wire Co.* (1938), 296 Ill. App. 568, 570, 16 N.E.2d 824, 825; *People ex rel. Pantier v. Pantier* (1921), 221 Ill. App. 574, 575-76; *Shroeder v. Clarke* (1897), 71 Ill.

---

[1]Defendant John B. Ehret (Mr. Ehret), a licensed attorney at law, is the sole or principal shareholder or head of Ehret-Krohn Corp. All parties to this appeal stipulated before trial that Mr. Ehret was personally responsible for any liability of Ehret-Krohn Corp. to plaintiff and that the Ehret-Krohn "corporate veil" should be pierced. The case is captioned in both Mr. Ehret's and the corporation's names, but for simplicity's sake and in order to resolve great inconsistency in the record as to defendants' identity, the appealing defendants will be referred to simply as "Ehret."

App. 74, 75.) Neither is a docket entry or a mere reference or recital in an abstract, transcript, certificate of evidence, or bill of exceptions that a judgment has been entered. (*People ex rel. Pickerill v. New York Central R.R. Co.* (1945), 391 Ill. 377, 382, 63 N.E.2d 405, 407; *Metzger v. Wooldridge* (1899), 183 Ill. 174, 178, 55 N.E. 694, 695; *Terry v. Trustees of Hamilton Primary School* (1874), 72 Ill. 476, 479; *Rittenhouse v. Dixon National Bank* (1968), 96 Ill. App. 2d 391, 393, 238 N.E.2d 640, 640-41; *People v. Brewerton Coal Co.* (1929), 253 Ill. App. 414, 415; *Ashmore v. Skene Lead Co.* (1909), 150 Ill. App. 381, 382.) A notice of appeal's reference to a judgment not otherwise shown of record was insufficient to avoid dismissal of the appeal in *Harris v. Annunzio* (1952), 411 Ill. 124, 103 N.E.2d 477. (Accord *Hayes v. Industrial Comm'n* (1943), 383 Ill. 272, 48 N.E.2d 940; *Palefrone v. Shelton* (1949), 337 Ill. App. 99, 85 N.E.2d 52 (abstract of opinion), *appeal dismissed* (1949), 403 Ill. 628.) In the case at bar, recital of a judgment in the notice of appeal, in the order setting an appeal bond, or in the appeal bond itself was no more a judgment than were recitals in the cases just cited.

■■ Though it is the responsibility of the appellant to furnish the appellate court with a full record (*Dobsons, Inc. v. Oak Park National Bank* (1980), 86 Ill. App. 3d 200, 208, 407 N.E.2d 993, 999), we can adjudicate in the interest of complete justice even when a record as filed is incomplete (*La Bree v. Schrieber Co.* (1983), 116 Ill. App. 3d 15, 18, 452 N.E.2d 1, 3). Accordingly, after investigation by this court itself, we have taken judicial notice that in the law record book maintained by the clerk of the circuit court for October 31, 1986, is to be found a record of judgment for $30,500 on the jury's verdict against Ehret in this case. Accordingly, we proceed to consider the merits of Ehret's appeal.

Ehret contends that (1) the jury verdict in Heavey's favor was supported by insufficient evidence of an express contract between Heavey and Ehret; (2) the verdict was supported by insufficient evidence of an implied contract; (3) Heavey was not the procuring cause of orders for which commissions were claimed; (4) Heavey's final argument to the jury was not properly based on the evidence; (5) the court improperly failed to give Ehret's originally tendered jury instruction as to plaintiff's express- and implied-contract theories of recovery and as to Ehret's counterclaim; and (6) the court erred in commenting during trial on the evidence or on Ehret's theory of recovery in a manner allegedly prejudicial to Ehret.

## I. EVIDENCE OF EXPRESS CONTRACT

Heavey testified as to the terms of an oral contract that he testified he made with Ehret whereby Heavey would work as a salesman for commissions. Heavey testified that he worked under that contract for 10 years until he resigned from his job in 1982. He further testified that when he resigned he had booked orders on which he had not yet been paid commissions. He testified as to the amount still claimed to be owed him by Ehret.

For his part, Mr. Ehret testified that Ehret's agreement with Heavey provided only that Heavey would be paid commissions after Heavey terminated his employment "on the same basis that our contract protected us, and in no other basis. Any other basis would have meant that we were paying him out of our own pockets rather than paying him with commissions that we collected from the companies we represented." The "contract" to which Mr. Ehret referred at this point was any contract between the Ehret corporation and any manufacturer that it represented and that made products for which Heavey procured an order.

From the form contract cited by Ehret that was made between the Philadelphia Gear Corporation (called "Company" in the contract) and the Ehret corporation (called "Sales Representative" in the contract), it appears that after notice of termination of the contract, "[n]o commission shall become due to the Sales Representative on any orders either obtained or accepted after date of the termination of the Agreement." The form contract continued: "A representative who has been or has given notice of termination will receive commissions for a period of thirty (30) days after such notice on confirmed orders arising from proposals initiated and quoted by him." Although at most points in the form contract the term "Sales Representative" was used to denote the Ehret corporation, the form also occasionally used the term "his" in apposition to "Sales Representative" and occasionally used the mere term "representative" to refer to a "Sales Representative" and thus to the Ehret corporation.

It is apparent that the contract form was devised for use with either a corporate or a natural person as "Sales Representative" but that the language of the form was not uniformly neutral as to that point. Given such a context, it is equally apparent that the term "representative" in the quoted language regarding termination referred to the Ehret corporation itself and not to any individual salesperson who might be employed by the Ehret corporation. Thus, the logical interpretation of Mr. Ehret's testimony, about paying Heavey on the same basis that the Ehret corporation's manufacturer contracts "pro-

tected" Ehret so as to keep Ehret from having to pay Heavey out of its own pocket, is that if the Ehret-manufacturer contract were terminated, an Ehret salesperson would not be paid commissions on any orders that Ehret itself was not paid commissions on. However, this interpretation speaks only to termination between Ehret and manufacturer, not to termination between Ehret and salesperson. Consequently, under Mr. Ehret's own version of the contract between Heavey and Ehret as being dependent on the Ehret-manufacturer contract, so long as the Ehret-manufacturer contract remained in force there should logically be no time limit imposed by the latter on payment by Ehret to Heavey of commissions on orders secured by Heavey before he resigned.

Ehret's argument that plaintiff "refuses to accept that he was bound by the time for which [manufacturers] pay on termination" ignores the distinction between an Ehret-manufacturer termination, to which the manufacturer contract plainly referred, and an Ehret-salesperson termination. Equally confused is Ehret's argument that by resigning, Heavey would have enriched himself because under Heavey's version of his employment contract he could then claim commissions "forever," while Ehret "could not expect to collect the commissions from Philadelphia Gear Corp. after September 30, 1982, if Ehret-Krohn had gone out of business or quit (like Heavey did) on July 30, 1982." Heavey does not claim commissions "forever" but rather only commissions on orders the securing of which was attributable to his efforts before resignation. Moreover, his claim was in no way affected by Ehret's potential inability to collect commissions longer than 30 days after any termination of a contract between Ehret and a manufacturer such as Philadelphia Gear Corporation, since such a termination is not shown actually to have occurred during the period between Heavey's resignation and Ehret's collection of commissions from manufacturers on orders attributable to Heavey. And, as Heavey argues, "it would hardly seem unusual for an employer to have one arrangement regarding payment from its suppliers and a completely different arrangement regarding the compensation of his employees."

■■ ■ Mr. Ehret's testimony was at times contradictory to his own theory of the contract with Heavey. As to the express-contract and the implied-contract claims in this case, the issue on review is whether the jury's verdict was against the manifest weight of the evidence. (*Lawson v. G. D. Searle & Co.* (1976), 64 Ill. 2d 543, 553, 356 N.E.2d 779, 784.) The credibility of witnesses and the weight accorded to their testimony are matters for determination by the trier of fact. (*Apollo Heating & Air Conditioning Corp. v. American Na-*

*tional Bank & Trust Co.* (1985), 135 Ill. App. 3d 976, 978, 482 N.E.2d 690, 692.) Whether an oral contract exists, its terms and conditions, and the intent of the parties are questions of fact to be determined by the trier of fact. (*In re Estate of Kern* (1986), 142 Ill. App. 3d 506, 514, 491 N.E.2d 1275, 1280, *appeal denied* (1986), 112 Ill. 2d 575.) The appellate court cannot substitute its judgment for the jury's on a fact question. (*O'Donnell v. City of Chicago* (1984), 126 Ill. App. 3d 548, 551, 467 N.E.2d 971, 974, *appeal denied* (1984), 101 Ill. 2d 583.) In view of the ample testimony by Heavey as to the existence and terms of an express contract, we find that the jury's verdict was not against the manifest weight of the evidence.

■ Ehret argues that there was a conflict between Heavey's testimony and his complaint, in that Heavey testified that his employment contract was formed in August 1972, whereas his complaint stated that it was formed over a period of several months. A material variance between contract pleaded and contract proved generally precludes recovery. (*Metal v. Gamm* (1931), 262 Ill. App. 140, *cert. denied* (1931), 262 Ill. App. xiv.) However, the record discloses no such variance as Ehret urges. Heavey's second amended complaint alleges merely that during a conversation in August 1972 *and* on other occasions within several months thereafter, the described terms of an offer were stated, which Heavey accepted in August 1972. This language at worst is ambiguous; at best, it reflects a statement of the terms during the August conversation and their restatement on other occasions thereafter. In neither case does it constitute a variance from Heavey's testimony that the contract was formed in August 1972.

Ehret also argues that the contract alleged by Heavey "would give away corporate assets without permission or ratification of the corporation." Ehret further argues that Heavey's version of the contract would call for Ehret to pay him "forever" even though if Ehret went out of business, it could not expect to receive commissions for more than 30 days from Philadelphia Gear Corporation. As previously noted, this argument confuses Ehret-manufacturer terminations with Ehret-salesperson terminations. In addition, by Ehret's own admission, Heavey had always accepted commission payments only as Ehret was paid, belying any claim that Heavey asserts the type of contract that Ehret portrays.

■ The case cited by Ehret on this point deals only with extraordinary and unusual contracts that give away an interest in the corporation as not being within a corporate officer's authority; this is not the case. (*Smith v. Shoreline Printers & Publishers, Inc.* (1955), 6 Ill. App. 2d 290, 127 N.E.2d 677.) But most importantly, Mr. Ehret stipu-

lated to "pierce" Ehret's "corporate veil," and for Ehret now to offer its corporate status as a shield is untenable. Besides, Ehret did not raise the ratification issue in its post-trial motion, and the issue may accordingly be treated as having been waived. *Nelson v. Union Wire Rope Corp.* (1964), 31 Ill. 2d 69, 114, 199 N.E.2d 769, 793-94; *Roman v. City of Chicago* (1985), 134 Ill. App. 3d 14, 18, 479 N.E.2d 1064, 1067.

## II. EVIDENCE OF IMPLIED CONTRACT

Ehret represents a confusing argument in regard to sufficiency of the evidence to support a verdict based on an implied contract. First, Ehret asserts that by resigning, Heavey enriched himself rather than Ehret's having been enriched by retention of commissions owed Heavey; we have already rejected that quasi-argument. Second, Ehret asserts that the orders booked to Heavey did not confer a benefit on Ehret because the customers had placed the orders as a result of parts breakage rather than Heavey's efforts. Yet whether Heavey lifted a finger has nothing to do with whether Ehret received a benefit (though it may pertain to whether the benefit constituted unjust enrichment).

Though Heavey did not expressly ground his complaint or his appellate brief on an implied-contract theory, he argues in his brief that the evidence was sufficient to support a judgment on such a claim. He argues that he offered substantial evidence of his sales activity on Ehret's behalf, including competitive efforts connected with orders for spare or replacement parts, and of Ehret's contemporaneous belief that Heavey had earned commissions because of that activity. Accordingly, Heavey urges that it would be unjust to allow Ehret to keep commissions resulting from Heavey's activity without paying Heavey for that activity.

■■ An implied contract is created by law as a result of the parties' acts. (*Bull v. Mitchell* (1983), 114 Ill. App. 3d 177, 186, 448 N.E.2d 1016, 1023; *McDaniel v. Silvernail* (1976), 37 Ill. App. 3d 884, 888, 346 N.E.2d 382, 385-86; *First National Bank v. Glenn* (1971), 132 Ill. App. 2d 322, 324, 270 N.E.2d 493, 495.) Implied contracts are sometimes divided into contracts implied in fact and those implied in law. (*People v. Dummer* (1916), 274 Ill. 637, 641, 113 N.E. 934, 935; *Bartolo v. Skaggs Construction Co.* (1975), 25 Ill. App. 3d 117, 323 N.E.2d 123 (abstract of opinion).) Contracts implied in fact arise from a promissory expression that is inferred from circumstantial evidence of an intent to be bound. (*Gary-Wheaton Bank v. Burt* (1982), 104 Ill. App. 3d 767, 775, 433 N.E.2d 315, 323.) Contracts implied in law

(quasi-contracts) arise notwithstanding the parties' intentions, result from a duty imposed by law, and are contracts merely in the sense that they are created and governed by principles of equity. (*Steinberg v. Chicago Medical School* (1977), 69 Ill. 2d 320, 334, 371 N.E.2d 634, 641; 17 C.J.S. *Contracts* §4 (1963).) It is in connection with contracts implied in law that the concept of unjust enrichment is involved. (See, *e.g., Premier Electrical Construction Co. v. La Salle National Bank* (1984), 132 Ill. App. 3d 485, 496, 477 N.E.2d 1249, 1257.) No claim on a contract implied in law can be asserted if an express contract or a contract implied in fact exists between the parties and concerns the same subject matter, but the rule is otherwise if the quasi-contractual claim involves different subject matter. (*Board of Directors of Carriage Way Property Owners Association v. Western National Bank* (1985), 139 Ill. App. 3d 542, 547, 487 N.E.2d 974, 978.) Where there is a dispute as to what language was used, it is a fact question for the jury; also a fact question, governed by the court's instructions, is whether and on what terms a contract was formed. *Chichester v. Whiteleather* (1869), 51 Ill. 259, 260; *Peoria Harbor Marina v. McGlasson* (1982), 105 Ill. App. 3d 723, 727, 434 N.E.2d 786, 790.

■ The jury in this case seems to have been instructed on an express- and implied-in-law contract theory. If the jury found for Heavey on an implied-in-law theory, it did not or could not properly find that an express contract between Ehret and Heavey covered the subject matter. On the other hand, if the jury found for Heavey on an express contract, it could not also properly have found a contract implied in law as to the subject matter. We do not know on what theory the jury found for Heavey, since its verdict form was general; and if there was sufficient evidence for its finding to be sustained on an express-contract theory, it is irrelevant whether sufficient evidence was offered to support the verdict on an implied-in-law theory. Nevertheless, we hold that, given the evidence that Heavey rendered services not intended to be gratuitous and that they resulted in a benefit to Ehret, the jury's verdict was also not against the manifest weight of evidence on an unjust-enrichment theory of contract implied in law.

### III. PROCURING CAUSE

■ Ehret argues that as a matter of law Heavey's complaint "offers no evidence" that he was the procuring cause of the orders in question. Ehret further argues that Heavey did not testify to having engaged in "sales activity" or having "originated" the orders, and Ehret quotes briefly from the opinions or headnotes in numerous cases. In the reply brief, Ehret repeats the course followed at trial of

confusing Heavey's sales efforts regarding replacement orders with Ehret's sales efforts regarding the original installation for which the replacement parts were to be used.

Heavey responds that he testified as to sales efforts in regard to the replacement orders. He continues that Ehret did not contradict his testimony as to having procured the orders and that Ehret apparently once believed him to be their procurer, since Ehret had paid him a commission, though at a unilaterally reduced rate. Heavey correctly contends further that the cases cited by Ehret on procuring cause are inapposite or actually support Heavey's position.

In particular, Ehret insists that Heavey's testimony did not fulfill the requirements of *Scheduling Corp. of America v. Massello* (1983), 119 Ill. App. 3d 355, 456 N.E.2d 298, in regard to the law of procuring cause. Yet *Massello* involved commission claims for sales on unknown dates that might have been before or after the salesman resigned. There was no evidence that the salesman was the procuring cause of the post-resignation sales. Even so, the court stated that the salesman was "clearly entitled to commissions on sales which occurred prior to resignation, and, as to post-resignation sales, a commission is in order if it is established that Massello was the procuring cause of the sale." (*Massello*, 119 Ill. App. 3d at 364-65, 456 N.E.2d at 305.) In the case at bar, all the orders in question were booked to Heavey before he resigned; none was booked after his resignation; and as to these preresignation orders, he repeatedly testified that he was the procuring cause. Ehret's reliance on *Massello* is decidedly misplaced, and Ehret's argument as to lack of evidence on procuring cause is without merit.

### IV. CLOSING ARGUMENT

■■■ The thrust of Ehret's next contention is that, over Mr. Ehret's objection during closing argument, Heavey's counsel misstated the amount of commissions collected by Mr. Ehret during his last year in business as "half a million dollars" and that the misstatement, combined with assertions that exhibits supported the figure, had the result of prejudicing the jury by depicting Mr. Ehret as "rich and selfish," thus requiring a new trial. Ehret asserts that because the trial judge first sustained an objection to "half a million dollars," then overruled the objection after being advised by Heavey's counsel that the exhibits in evidence reflected that figure, the trial judge gave the impression of having vouched for the correctness of the figure. Ehret also characterizes Heavey's counsel's conduct in extravagantly unflattering terms.

In the reply brief, Ehret abstracts the commission records constituting the exhibits in question and concludes that they show only $241,310.15 in total commissions to the Ehret corporation from July 1982 through June 1983, and only $318,651.39 during the entire period from July 1982 through Ehret's closedown in January 1984, of which commissions only $77,213.31 were connected with Heavey's accounts and the balance was attributable to other persons' sales efforts.

Ehret contends that Heavey's closing argument erroneously and irrelevantly addressed Ehret's financial condition, that this is a close case on the question of Heavey's right to receive payment after resigning, and that accordingly Heavey has the burden of showing an absence of prejudice from the allegedly improper closing argument.

Heavey contends that his counsel's closing argument was proper because Ehret's commission records in exhibit show that Ehret received $470,000 in manufacturers' commissions during "the period in question" and that the argument was invited by Ehret's alleged suggestions at trial that Ehret had never received payment on the orders that Heavey generated and was now claiming commissions on.

A thorough examination of the exhibits in question, which consist of records maintained by Ehret of commissions received from manufacturers and allocated to sales personnel, shows that Ehret's contentions are essentially correct as to the totals for the period following Heavey's resignation. The court's computations as to various periods show that for July 1982 through January 1984, the exhibits reflect $77,063.11 in manufacturers' commissions attributed to Heavey; for August 1982 to July 1983 inclusive, $221,351.52 in total manufacturers' commissions; for July 1982 to July 1983 inclusive, $249,223.41 in total commissions; and for the entire period from July 1982 to January 1984 inclusive, $318,651.39 in total commissions. Heavey's asserted figures of $470,000 or $500,000 in Ehret commissions can be approximated only by adding certain running totals shown on the commission records, and those running totals overlap into periods prior or subsequent to the year following Heavey's resignation. Despite Heavey's contentions to the contrary in resisting Ehret's posttrial motion and Heavey's ambiguous reference in his appellate brief to "the period in question," that post-resignation year was clearly the time period to which his counsel was referring at the critical juncture in closing argument. Hence, it is obvious that Heavey's counsel was arithmetically incorrect in closing argument and in the brief on this appeal.

The question remains whether Heavey's mathematical error con-

stituted reversible error. First, we note that Ehret was able to and did respond to the incorrect figures at the outset of Ehret's closing argument, which was the last word on the subject since Heavey waived his rebuttal. Second, while we cannot tell for certain, it seems plausible from an inspection of the transcript that after Heavey's counsel represented to the trial judge that the exhibits reflecting commission figures were in evidence, the judge peremptorily overruled Ehret's objection rather than actually scrutinizing the exhibits and satisfying himself that the half-million-dollar total cited by Heavey's counsel was correct. If this was so, then Ehret's contention that the trial judge's ultimate ruling gave "the appearance of affirming the correctness" of the figure is without force. Third, the fact that the jury's verdict was in the precise amount of an earlier stipulation between Ehret and Heavey, as to the amount of the disputed commissions at a 50% rate less $5,000 already paid Heavey, detracts from Ehret's contention that the reference to half a million dollars prejudiced the jury against Ehret and, by inflaming and winning them over through falsehoods, caused the jury to return a verdict for more than the evidence would otherwise justify.

Ehret's citations to case law in support of its contention are unpersuasive. The cases of *Freehill v. DeWitt County Service Co.* (1970), 125 Ill. App. 2d 306, 261 N.E.2d 52, *appeal denied* (1970), 44 Ill. 2d 586, and *Chicago, Peoria & St. Louis R.R. Co. v. Woolridge* (1898), 174 Ill. 330, 51 N.E. 701, involved wrongful-death actions in which the plaintiffs improperly presented *testimony* of no wealth and poor health on their part in order to win over the jury. Here, it is merely a reference in closing argument to defendant Ehret's commission receipts, promptly rebutted by Ehret, that is in issue. The case of *Kolakowski v. Voris* (1981), 94 Ill. App. 3d 404, 418 N.E.2d 1003, *appeal denied* (1981), 85 Ill. 2d 565, dealt primarily with the standards for a trial court's decision whether to grant a new trial, not the standards for appellate review, and based its affirmance of the grant on factors in addition to closing-argument improprieties. Indeed, the opinion emphasizes that "[t]he appellate court, in reviewing this decision, must not reverse it absent a clear abuse of discretion, affirmatively shown," and "must accord proper deference to the trial court's assessment of the errors." (*Kolakowski*, 94 Ill. App. 3d at 409-10, 418 N.E.2d at 1007.) In the case at bar, Ehret's contention regarding closing argument was presented to the trial court in a post-trial motion and was rejected.

It is true that, as Ehret urges, our supreme court has stated in a case involving prejudicial testimony and closing argument

that " '[w]here error is shown to exist, it will compel reversal, unless the record affirmatively shows that the error was not prejudicial.' " (*Freeding-Skokie Roll-Off Service, Inc. v. Hamilton* (1985), 108 Ill. 2d 217, 223, 483 N.E.2d 524, 527, quoting *Duffy v. Cortesi* (1954), 2 Ill. 2d 511, 517, 119 N.E.2d 241, 245.) Nevertheless, in the present case, the presumed error came only in closing argument and was countered by Ehret in Ehret's own closing argument; in view of the correspondence between the amount of the verdict and Ehret's stipulation, such error did not perceptibly influence the jury; the exhibits showing the true figures were in evidence; this is not a close case on Heavey's right to be paid after resigning; and the trial court, which was in the best position to assess the impact of closing argument and evidence on the jury, rejected an identical contention in Ehret's post-trial motion. Thus, we hold that the record affirmatively shows the lack of prejudice from Heavey's arithmetic on closing argument.

V. JURY INSTRUCTION

■■ Although somewhat elliptically, Ehret next contends that the trial court improperly rejected a jury instruction that would have called for a verdict of express or implied contract but not both. Ehret asserts that the trial court sustained an objection by Heavey to such an instruction and that it is now unknown whether the jury found an express or an implied contract or a "jumble" of both.

The record, far from disclosing any objection by Heavey, reveals that Mr. Ehret acquiesced in Heavey's counsel's statement that Mr. Ehret had withdrawn the instruction in question, and further reveals that Mr. Ehret himself termed it duplicative. Moreover, Mr. Ehret did not request separate verdict forms as to express and implied contracts but apparently acquiesced in the verdict forms used. The instructions given on the express- and implied-contract counts of Heavey's complaint were based on Illinois Pattern Jury Instructions, Civil, No. 21.02.02 (2d ed. 1971).

"To raise an issue on appeal concerning the giving of or the failure to give an instruction, the appellant must provide the reviewing court with the content of the instruction conference establishing that the appellant there raised the argument that he advances on appeal or else he is barred from raising it in the reviewing court." (*Brown v. Decatur Memorial Hospital* (1980), 83 Ill. 2d 344, 350, 415 N.E.2d 337, 339-40; *accord, Bean v. Norfolk & Western Ry. Co.* (1980), 84 Ill. App. 3d 395, 406, 405 N.E.2d 418, 427.) Ehret has not done so here. Thus, we hold that Ehret waived any issue as to the instructions or verdict form.

## VI. TRIAL JUDGE'S COMMENTS

Finally, Ehret contends that the trial judge committed reversible error when he commented that Ehret thought that the United States Navy should pay for Heavey's business trip. The judge's comment was made in the jury's presence while overruling Heavey's objection to Ehret's offer of evidence that allegedly showed double billing by Heavey to both Ehret and the Navy for mileage. Ehret cites no authority in support of his contention.

Heavey replies that the trial judge was merely making a fair comment and stating the obvious. Heavey argues further that Ehret failed to show any prejudice from the comment.

We note that Ehret failed to object to the trial judge's comment at the time it was made and did not raise this issue in the post-trial motion. Ehret cannot raise the issue for the first time on appeal. (*County of Cook v. Holland* (1954), 3 Ill. 2d 36, 47, 119 N.E.2d 760, 766; *accord Forest Preserve District v. Wike* (1954), 3 Ill. 2d 49, 57-58, 119 N.E.2d 734, 738; *Regas v. Linton* (1979), 72 Ill. App. 3d 7, 14, 390 N.E.2d 509, 515.) Moreover, while there seems to be some possibility that this comment conveyed mild acerbity on the judge's part, its effect is diluted by the fact that it was uttered while ruling in Ehret's favor, and Ehret apparently did not think it harmful enough to take exception either at the time or shortly after trial. We therefore are unable to find any prejudice to Ehret from the comment, and it did not constitute reversible error.

## VII. CONCLUSION

Accordingly, we affirm the judgment and post-trial orders of the circuit court.

Affirmed.

HARTMAN, P.J., and BILANDIC, J., concur.