**SOUTHERN RAILWAY COMPANY,**
**Plaintiff–Appellant,**

v.

**Winston M. (Bud) MULLINS, d/b/a B**
**& M Construction Company,**
**Defendant–Appellee.**

Court of Appeals of Tennessee,
Eastern Section.

March 4, 1988.

Permission to Appeal Denied by
Supreme Court May 23, 1988.

Earl R. Layman, Key, Lee, Layman, Child, O'Connor & Petty, Knoxville, for plaintiff-appellant.

Frank Q. Vettori, O'Neil, Parker & Williamson, Knoxville, for defendant-appellee.

OPINION

FRANKS, Judge.

In this action plaintiff sought indemnity for moneys paid in the settlement of a Federal Employee's Liability action from the defendant by the express terms of an alleged contract between the parties. From an adverse judgment, plaintiff has appealed.

The evidence does not preponderate against the facts determined by the chancellor. T.R.A.P., Rule 13(d). We adopt pertinent findings:

It appears that in 1978 the defendant became one of plaintiff's approved contractors. The only thing negotiated was the plaintiff's hourly rates. There was no discussion about indemnity or insurance.

There were two types of contracts involved between the parties over the years. One was a bid type contract, generally when the defendant was the contractor. The other was an hourly rate arrangement with the plaintiff as the contractor.

The case before the court involves an hourly rate arrangement or contract.

Prior to the accident there were three instances where the plaintiff mailed a request for quotation, and later after

awarding the job to the defendant sent a service order.... These bid type contracts occurred in 1978 and 1979. In these instances the terms and conditions with indemnity and insurance provisions were contained on the back of the request for quotation and the service orders. In addition there were 14 hourly rate type jobs which were substantiated by service orders[1].... However there were approximately 233 invoices sent by the defendant to the plaintiff with no corresponding service order during the period prior to the accident.... Approximately 8 of these invoices were over $2000.00....

The plaintiff had an internal policy that if the job was less than $2000.00, or an emergency, a service order was not issued by the plaintiff. On occasions the plaintiff advised the defendant to issue 2 invoices in order to get the invoices under $2000.00, so as to avoid the necessity of a service order.

At no time prior to the accident did the parties discuss or negotiate on the basis of the indemnity or insurance provisions contained on the back of the service orders. There is also no evidence that the defendant ever carried insurance prior to the accident, which would cover a loss such as the one which we have in this case.

A couple of weeks before March 22, 1982, James Miles, a building and bridge supervisor with the plaintiff, contacted Bill Corum, an employee of the defendant, for the purpose of securing a Komatsu dozer and operator to pull down the wooden railroad bridge at Oostanaula Creek near Calhoun, Georgia. In this conversation there was no discussion about service orders, terms and conditions on the reverse side of a service order, insurance or indemnity....

On March 22, 1982, John Damewood went to work as an operator of the defendant's dozer at the Oostenaula Creek railroad bridge. On the same day the plaintiff prepared the service order in question at its office in Washington, D.C.... It is uncertain as to when the service order was mailed to the defendant, ...

On March 30, 1982, while engaged in the demolition of the bridge, a hook broke ... causing a cable which was attached to the bulldozer to recoil striking Mr. Damewood, resulting in his death....

The defendant's insurance carrier paid Mr. Damewood's widow under the provisions of the Tennessee Worker's Compensation Law.

The widow sued the plaintiff, alleging that the deceased was an employee of the plaintiff and entitled to recover under the terms and provisions of the Federal Employee's Liability Act (FELA).

While contracts of indemnification may be express or may arise by implication, *Houseboating Corp. of America v. Marshall*, 553 S.W.2d 588 (Tenn.1977), we agree with the chancellor that the evidence establishes neither an express nor implied contract of indemnity. The chancellor determined the agreement between the parties was an "oral express contract". The chancellor's conclusion is essentially correct. *See* 17 C.J.S., *Contracts*, § 9. The

---

1. In fine print on the back side of each of the service orders was the following:

Contractor will and hereby does release, protect, indemnify, and save Company wholly harmless from and against all loss, cost, expense, or damage resulting from death, personal injury, or damage to property (whether property of Company or of others), which arises out of or in connection with the work to be done hereunder by Contractor or by any subcontractor, or by any agent or employee of either, or from any act or omission of, or method pursued or hazard encountered by, the Contractor, any subcontractor, or any agent or employee of either, in the performance of the work and whether or not negligence on the part of the Company, its agents or employees, may have caused or contributed to such death, injury, damage or loss; provided, however, that if under the law applicable to the enforcement of this contract an agreement to indemnify against the indemnitee's own negligence is invalid, then and in that event, Contractor's obligation to indemnify Company under this paragraph shall be reduced in proportion to the negligence of Company, if any, which has proximately contributed to such death, personal injury, or property damage.

oral agreement was, in substance, an agreement by the defendant to furnish equipment and operators at a pre-determined hourly rate to plaintiff when the need arose for defendant's services upon oral demand. Service orders were sent pursuant to an arbitrary rule of the plaintiff, apparently for control purposes where the cost would exceed $2,000.00. In the few instances when service orders were issued, the following was printed on the face of the order near the bottom:

FURNISH SUBJECT TO TERMS AND CONDITIONS ON REVERSE SIDE WHEREIN THE ABOVE–DESIGNATED SOUTHERN RAILWAY SYSTEM COMPANY IS REFERRED TO AS "COMPANY" AND THE PARTY PERFORMING SERVICES UNDER THIS ORDER IS REFERRED TO AS "CONTRACTOR".

In this regard, Mullins testified when he received the written service orders he did not familiarize himself with the small print on the back because "it was not a contract to us". We cannot say the defendant acted unreasonably since on this record a reasonable person would not conclude, under the longstanding working relationship between the parties, that plaintiff would attempt to alter the terms of the oral contract in the limited number of instances when the cost of the equipment rentals merely exceeded $2,000.00 per order by placing conditions on the service order delivered after the work was commenced or completed.

Finally, plaintiff argues "the chancellor erred in refusing to consider evidence that Mullins attempted to obtain insurance ... to satisfy the requirements of the service order". The evidence does not support this assertion.

A few weeks before the accident, Mullins' insurance agent, at the behest of the insurance company, "offered" a package deal of benefits which included "extended liability insurance coverage" for approximately the same premium which Mullins had been paying. The agent procured the extended coverage but, apparently, the contractual liability coverage was not included, for whatever reason.

It cannot be inferred from these circumstances that either Mullins knew the conditions set forth in the fine print on the back of the service orders nor by accepting the coverage his duty to procure such coverage was established.

We concur with the chancellor's finding that the oral contract to provide equipment and operators at a pre-set hourly rate does not include an indemnity agreement and we affirm the trial court's judgment.

We have examined the remaining issues and find them to be either without merit or unnecessary to resolve upon the foregoing determination.

The costs of appeal are assessed to appellant.

ANDERSON, J., and WILLIAM H. INMAN, Special Judge, concur.