CENTURY 21 CASTLES BY KING, LTD., Plaintiff-Appellee, v. FIRST NATIONAL BANK OF WESTERN SPRINGS, Defendant-Appellant.

Second District   No. 2—87—0874

Opinion filed June 9, 1988.

Lord, Bissell & Brook, of Chicago (Dale T. Miller, of counsel), for appellant.

Kenneth A. Abraham & Associates, P.C., of Darien (Kenneth A. Abraham, of counsel), for appellee.

JUSTICE REINHARD delivered the opinion of the court:

Defendant, First National Bank of Western Springs (the Bank), appeals from a judgment following a bench trial in favor of plaintiff, Century 21 Castles by King, Ltd. (Century 21), awarding Century 21 $18,000 as a real estate broker's commission for the sale of commercial property owned by the Bank.

The following issues are raised on appeal: (1) whether Century 21 was only entitled to a finder's fee rather than a broker's commission; (2) whether the trial court erred in admitting expert testimony as to the reasonable and customary real estate broker's commission; (3) whether Century 21 properly pleaded an implied in fact contract claim; and (4) whether Century 21 proved an implied in fact contract for a real estate broker's commission.

Century 21's amended complaint against the Bank was entitled "complaint in assumpsit on *quantum meruit*" in count I and "breach of contract" in count II. At trial, evidence was adduced that, on January 29, 1983, Century 21 and the beneficiaries of a land trust, for which the Bank held legal title, entered into a listing agreement whereby Century 21 was engaged as the listing broker for a piece of commercial property in Hinsdale, Illinois. The agreement provided for a commission of 10% of the sales price. David Hill, a real estate salesman working through Century 21, eventually contacted Wayne and Joyce Ishler, who, on March 12, 1984, submitted an offer to purchase the property for $165,000. Hill called one of the beneficiaries, Terry Drane, told him of the offer, and mailed a copy of the offer to Drane's attorney.

The Bank had made substantial loans to the beneficiaries that were in default. In March 1984, the Bank learned Drane might file bankruptcy and took an assignment of the entire beneficial interest in the trust. At the time the assignment was executed, Drane also disclosed to the Bank president, for the first time, that he was attempting to sell the property, that he had a listing agreement with Century 21, and that a potential buyer had been found by Century 21. The Bank president, William O'Meara, also an attorney who had specialized in real estate law, testified that he could not recall if he was told the name of the prospective purchaser, how to locate him, or if he was given the offer to purchase. O'Meara called Hill on or about March 14, 1984, and asked him to contact the Ishlers and bring them to the Bank because the Bank was now the owner of the property through the assignment of the beneficial interest. Hill testified that O'Meara said he would honor the commission agreement. O'Meara testified that he only asked Hill to bring the Ishlers to the Bank and told Hill not to be involved further. Hill also stated that O'Meara mentioned that he had a copy of the contract offer made to the beneficiaries.

On March 21, 1984, Hill brought the Ishlers to the Bank to meet with O'Meara. O'Meara proposed a $180,000 purchase price and offered to reduce the financing charges to make it attractive to the Ishlers. The Ishlers said they would think it over and left. The next day, Hill, after discussion with the Ishlers, prepared a revised offer to purchase, which reflected the negotiations of the previous day between O'Meara and the Ishlers. The revised offer was delivered to the Bank. Hill testified that, in several subsequent conversations with O'Meara, O'Meara requested the original listing agreement with the beneficiaries and, after receiving it, told Hill that he would pay him a $5,000 or $6,000 commission. O'Meara testified that he intended to compensate Hill, offered Hill $6,000 for bringing the parties together, and Hill refused to accept the money. Further negotiations between Hill and the Bank ceased, and the Ishlers' attorney prepared the offer to purchase which was accepted by the Bank. Hill was not present at the closing.

In finding for Century 21, the trial court rejected the express contract theory and found for Century 21 on "an implied contract generated *** by *** O'Meara." The court awarded Century 21 $18,000 on a *quantum meruit* basis relying on testimony of what the reasonable broker's fee for a commercial real estate sale was in the community.

We address initially the Bank's contention that the trial court

erred in basing its judgment on a contract implied in fact because that theory was not pleaded in the amended complaint or properly presented in a post-trial amendment to the complaint. Although Century 21 advances several arguments in response, we need only consider its contention that the amended complaint sufficiently states a contract implied in fact.

■ While count I of the amended complaint is labeled as a "complaint in assumpsit on *quantum meruit*," which would ordinarily signify a contract implied in law, the facts alleged in that count clearly plead acts and conduct which create a contract implied in fact. The only difference between an express contract and a contract implied in fact is that in the former the parties arrive at their agreement by words, either oral or written, while in the latter, their agreement is arrived at by a consideration of their acts and conduct. (*Mowatt v. City of Chicago* (1920), 292 Ill. 578, 581, 127 N.E. 176.) Thus, a contract implied in fact arises not by express agreement but, rather, by a promissory expression which may be inferred from the facts and circumstances which show an intent to be bound. *Heavey v. Ehret* (1988), 166 Ill. App. 3d 347, 354, 519 N.E.2d 996; *Gary-Wheaton Bank v. Burt* (1982), 104 Ill. App. 3d 767, 775, 433 N.E.2d 315.

■ ■ On the other hand, a contract implied in law exists from an implication of law that arises from facts and circumstances independent of an agreement or consent of the parties; the intention of the parties is entirely disregarded. (*Board of Highway Commissioners v. City of Bloomington* (1911), 253 Ill. 164, 173-74, 97 N.E. 280.) A contract implied in law is not a contract at all and is sometimes referred to as a quasi contract or constructive contract, and, historically, there being nothing else available, courts have allowed the action of assumpsit as a basis for recovery. (*Gaslite Illinois, Inc. v. Northern Illinois Gas Co.* (1976), 46 Ill. App. 3d 917, 924, 362 N.E.2d 725.) The term *quantum meruit* means literally "as much as he deserves" and is an expression that describes the extent of liability on a contract implied in law; it is predicated on the reasonable value of services performed. (*Edens View Realty & Investment, Inc. v. Heritage Enterprises, Inc.* (1980), 87 Ill. App. 3d 480, 486, 408 N.E.2d 1069.) Recovery is founded on the implied promise of the recipient of services or materials to pay for something which he has received that is of value to him. *Ashton v. County of Cook* (1943), 384 Ill. 287, 301, 51 N.E.2d 161.

■ As indicated, the heading of count I was inaccurate, but the body of the count properly pleaded a contract implied in fact. In this

regard, it is clear that Century 21 adequately alleged acts and conduct of both parties which gave rise to the implication that a contract did exist. Thus, we reject the Bank's argument that a contract implied in fact was not pleaded.

We consider next the Bank's contention that the evidence does not support the trial court's finding that a contract implied in fact was shown. Essentially, the Bank maintains that the proofs do not show that the Bank impliedly agreed to be bound by a real estate broker's contract, but, at best, imply that the parties agreed to contract for a finder's fee.

■ A reviewing court will not disturb a trial court's finding and substitute its own opinion unless the holding of the trial court is manifestly against the weight of the evidence. (*Schulenburg v. Signatrol, Inc.* (1967), 37 Ill. 2d 352, 356, 226 N.E.2d 624.) Where, as here, the judgment of the trial court is not accompanied by findings of fact, the presumption is that the trial court found all issues and controverted facts in favor of the prevailing party. *Kern v. Rafferty* (1985), 131 Ill. App. 3d 728, 731, 476 N.E.2d 52; *National Acceptance Co. of America v. Pintura Corp.* (1981), 94 Ill. App. 3d 703, 707, 418 N.E.2d 1114; see *People v. Winters* (1983), 97 Ill. 2d 151, 158, 454 N.E.2d 299.

■ The acts and conduct upon which the trial court properly found a contract implied in fact for a real estate broker's commission are as follows. At the time O'Meara first contacted Hill, he knew that a listing agreement existed between Century 21 and the trust beneficiaries, and that Hill, as an agent for Century 21, had presented an offer to purchase to one of the beneficiaries. The agreement provided for a broker's commission of 10% of the purchase price. O'Meara specifically asked Hill, a real estate salesman, to bring the prospective purchasers to the Bank. Hill testified that O'Meara told him that he would honor the commission agreement. This testimony was denied by O'Meara. When Hill brought the prospective purchasers to the Bank, O'Meara discussed the prior offer to the beneficiaries and presented a counteroffer and other financing terms. Following the meeting, Hill discussed the matter with the prospective purchasers and delivered a revised offer to purchase which essentially conformed to the terms discussed at the prior meeting. It was only after this occurred that O'Meara requested a copy of the listing agreement between Century 21 and the beneficiaries and, subsequently, refused to pay the broker's commission, but offered a finder's fee. Later, a standard real estate sales contract was prepared by an attorney for the purchasers which consisted of,

substantially, the same terms as those in the revised offer to purchase which was prepared by Hill.

From this evidence, we are satisfied that the trial court's finding of an implied contract in fact is not against the manifest weight of the evidence. While some of the facts in evidence are in conflict, the judgment of the court for Century 21 leads us to presume that, in the absence of specific findings of fact, it found those facts in favor of Century 21, the prevailing party. *Kern*, 131 Ill. App. 3d at 731, 476 N.E.2d at 54-55.

Because we find that a contract implied in fact for Century 21 to recover a real estate broker's commission exists, we necessarily reject the Bank's separate contention that Century 21 was only due a finder's fee (see generally *Otto Real Estate, Inc. v. Shelter Investments* (1987), 153 Ill. App. 3d 756, 506 N.E.2d 351) and that Century 21 failed to prove what sum it would be entitled to as a finder's fee.

The final contention raised by the Bank is that the *quantum meruit* theory of recovery required Century 21 to prove the reasonable value of the services that it rendered to the Bank. It argues that the testimony of Hill and another witness regarding the amount of a reasonable and customary broker's commission for the sale of commercial property was expert testimony and improperly admitted because Century 21 did not give notice to the Bank of the expert witnesses pursuant to Supreme Court Rule 220 (107 Ill. 2d R. 220). The trial court, although initially denying Century 21's offer of proof for this testimony on relevancy grounds only, as raised by the Bank, had later reversed its ruling and allowed reopening of the case to admit this testimony. Defendant then raised the question of whether Rule 220 prevented this testimony because no notice of any expert witness had been given to the Bank. The trial court ruled that the pertinent testimony of the customary and reasonable real estate broker's commission was not expert opinion and that Rule 220 did not apply to an expert opinion of a party. The case was then continued from June 24, 1987, to August 11, 1987, to allow the case to be reopened for testimony on this issue by both parties.

Regardless, we need not resolve whether Rule 220 is applicable under these facts or whether, if applicable, it mandated exclusion of the evidence under the circumstances. While the parties have discussed recovery of the broker's commission under a *quantum meruit* theory, which would involve testimony of the customary and reasonable fee, *quantum meruit* is an expression that describes the extent of liability on a contract implied by law. (*Nardi & Co. v. Al-*

*labastro* (1974), 20 Ill. App. 3d 323, 327, 314 N.E.2d 367; see also *Concord Industries, Inc. v. Harvel Industries Corp.* (1984), 122 Ill. App. 3d 845, 847-48, 462 N.E.2d 1252; *John Burns Construction Co. v. Interlake, Inc.* (1982), 105 Ill. App. 3d 19, 27, 433 N.E.2d 1126; *Edens View Realty*, 87 Ill. App. 3d at 486, 408 N.E.2d at 1075.) We have previously found that Century 21 has proved a contract implied in fact. Therefore, we must determine the terms that were implied through the acts and conduct of the parties.

■ The acts and conduct of the parties indicate that the Bank, through O'Meara, knew before O'Meara contacted Hill that the original listing agreement with the beneficiary provided for a 10% commission, that O'Meara told Hill he would honor that commission agreement, and that O'Meara, as an experienced real estate lawyer, would know that the real estate broker's commission in a commercial real estate sale would be 10%. Moreover, the 10% commission was also contained in the revised offer to purchase sent to the Bank by Hill. Accordingly, an implied term of the contract was the 10% commission, and it was unnecessary to introduce proof of the customary and reasonable broker's commission for commercial property.

■ Although our analysis differs in certain respects with that of the trial judge, as a reviewing court, we can sustain the decision of the circuit court on any grounds which are called for by the record regardless of whether the lower court relied on the grounds and regardless of whether the court's reasoning was correct. (*Bell v. Louisville & Nashville R.R. Co.* (1985), 106 Ill. 2d 135, 148, 478 N.E.2d 384.) The judgment of the circuit court is therefore affirmed.

Affirmed.

LINDBERG, P.J., and UNVERZAGT, J., concur.