# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON JANUARY 1999 SESSION

| | | |
|---|---|---|
| CHRIS-HILL CONSTRUCTION COMPANY, | ) | Tennessee Claims Commission Western Division, Claim 204648 |
| | ) | |
| Claimant/Appellant, | ) | |
| | ) | |
| v. | ) | Appeal No. 02A01-9803-BC-00057 |
| | ) | |
| STATE OF TENNESSEE, | ) | |
| | ) | |
| Defendant/Appellee. | ) | |

**FILED**

**February 4, 1999**

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

APPEAL FROM THE TENNESSEE CLAIMS COMMISSION
WESTERN DIVISION AT MEMPHIS
HONORABLE MARTHA BRASFIELD, COMMISSIONER

**For the Appellant:**
James W. McDonnell, Jr.
O. John Norris
WYATT, TARRANT & COMBS
6075 Poplar Avenue, Suite 650
Memphis, TN 38119-4721

**For the Appellee:**
John Knox Walkup
Attorney General and Reporter

Mary G. Moody
Senior Counsel

Laura T. Kidwell
Assistant Attorney General
425 Fifth Avenue North
Second Floor, Cordell Hull Bldg.
Nashville, TN 37243-0488

AFFIRMED

WILLIAM H. INMAN, SENIOR JUDGE

CONCUR:

W. FRANK CRAWFORD, JUDGE

DAVID R. FARMER, JUDGE

# **O P I N I O N**

<u>The Facts</u>

This claim arises from Chris-Hill Construction Company's ("claimant") participation in bidding on a Tennessee Department of Transportation ("TDOT") project for widening and improving the bridges and approaches over the Illinois Central Railroad, Tarent Branch and Cane Creek on U.S. 51 in Shelby County ("the project"). The plans and specifications for this project were prepared by TDOT which furnished them to interested bidders, including Chris-Hill and Dement Construction Company ("Dement").

Bobby Garland of the TDOT was available to prospective bidders to answer questions about contract requirements. Danny Stoppenhagen and J. B. Hill, representatives of Chris-Hill, contacted Garland to enquire if TDOT would enforce a note on the plans prohibiting the placement of a crane on the existing bridge in order to drive pilings. After checking with the TDOT Structures Division, Garland informed them that the note would be enforced. Chris-Hill thereupon added the costs of constructing a berm upon which to locate a platform for the crane to its bid.

On February 13, 1991, two days before the bids were to be opened, Dement Vice-President Ty Capps contacted Garland and advised him that there were conflicting provisions in the plans and specifications regarding the requirement of seismic connections in the bearing pilings for the bridges. He requested that TDOT issue an addendum to the contract clarifying the matter. Garland reviewed the plans and specifications and talked with Danny Stoppenhagen about his interpretation of them, and thereupon determined that there was a conflict in the documents. On February 14, Garland told Capps that an addendum clarifying the

requirements for seismic connections on the pilings would not be issued because it was too late to issue a clarification to all interested bidders. He told Capps to bid the job based upon his own (Capps') interpretation of the plans. On the same day, Stoppenhagen called Garland asking if "anything else had developed regarding the seismic piling." Garland advised Stoppenhagen, as he had advised Capps, that he should bid the job based upon his own (Stoppenhagen's) interpretation of the documents.

On February 15, 1991, the bids were submitted and opened. The two lowest bidders were Dement at $1,463,378 and Chris-Hill at $1,525,529. The contract was awarded to Dement. During the bid review process, Garland determined that Dement would still be the lowest bidder after adding $10,200 (Dement's estimated price for the seismic connections in controversy) to its bid as submitted.

After the contract was awarded, Dement and the TDOT agreed that the contract was ambiguous about whether the use of seismic connections in the bearing pilings for the bridges was required. As provided for in the Standard Specifications for Road and Bridge Construction, Dement and TDOT executed a supplemental agreement paying Dement $150 per connection for the seismic connections, for a total of $10,200. This amount would have been paid to Chris-Hill had it been the successful bidder.

After construction began, Dement obtained permission from TDOT to place a crane on the existing bridge in order to drive some of the pilings for the project, which eliminated the need to construct a berm or base for that purpose.

The contract required the installation of a double row of sheet piling parallel to the Illinois Central tracks in order to maintain the stability of the tracks during the excavation for and driving of the concrete bridge pilings. Claimant complained

3

that Dement was not only using a crane on the existing bridge, but had installed only one row of sheet piling, in violation of the contract.[1] Dement was thereupon instructed by TDOT to install the second row.

Chris-Hill filed this claim alleging that it sustained damages as a result of the negligence of the TDOT, in allowing Dement to use the existing bridge as the platform from which to drive the required pilings in violation of the contract. Claimant alleged that if the "secret variation" had been disclosed, the expense incurred for the construction of a berm would not have been required and consequently it would have been the low bidder. This action by TDOT is alleged to have been in violation of T.C.A. § 9-8-307(a)(1)(I) and (N) as hereafter stated. Claimant alleged further variations previously discovered.

Because TDOT always prepared its own cost estimates on projects, claimant requested production of TDOT's estimate of the costs involved in driving the pilings. This request was refused.

At the close of the claimant's case the Commissioner granted the motion of TDOT to dismiss, holding that there was no evidence that TDOT granted DEMENT the variance prior to the bidding and thus no negligence.

<u>Issues Presented for Review</u>

1.  Did the claimant present a *prima facie* case of negligence, or as enlarged by TDOT, what rights do the provisions of T.C.A. § § 54-5-114 --118 convey upon those bidding on a state highway project in accordance with those statutes?

2.  Does T.C.A. § 9-8-307(a)(1)(I) provide jurisdiction in the Tennessee Claims Commission for claims by unsuccessful bidders on Tennessee Department of Transportation construction projects, alleging that the State was negligent in allowing the successful bidder to deviate from the original plans and specifications?

_____

[1]Dement had discussed the matter with the railroad, who advised Dement that one row was adequate. But the TDOT thought otherwise and insisted on a double row as the contract specified.

3. Was the Commissioner correct in refusing to compel the State to Produce its construction estimate for this project?

Standard of Review

The case was involuntarily dismissed pursuant to Rule 41.02(2), T.R.C.P., which requires a consideration of the standard prescribed in *City of Columbia v. C. F. W. Const. Co.,* 557 S.W.2d 734 (Tenn. 1977):

> But in the non-jury case, when a motion to dismiss is made at the close of plaintiff's case under Rule 41.02(2), the trial judge must impartially weigh and evaluate the evidence in the same manner as though he were making findings of fact at the conclusion of all of the evidence for both parties, determine the facts of the case, apply the law to those facts, and, if the plaintiff's case has not been made out by a preponderance of the evidence, a judgment may be rendered against the plaintiff on the merits, or, the trial judge, in his discretion, may decline to render judgment until the close of all the evidence. The action should be dismissed if on the facts found and the applicable law the plaintiff has shown no right to relief.

This court's scope of review of the Commissioner's decision is pursuant to Rule 13(d), T. R. A. P. The findings of the trial court in granting a Rule 41.02(2) motion are accompanied by a presumption of correctness and, unless the preponderance of the evidence is otherwise, those findings must be affirmed. *Atkins v. Kirkpatrick,* 823 S.W.2d 547, 552 (Tenn. App. 1991).

Discussion

Chris-Hill asserted its claim for damages under T.C.A. § 9-8-307, sections (a)(1)(I) and (N), the latter of which provides jurisdiction in the Claims Commission for claims arising from "negligent deprivation of statutory rights." The statutory rights Chris-Hill seeks to enforce are those arising under T.C.A. § § 54-5-113 -- 118, which provide that the Tennessee Department of Transportation, when making contracts in its own behalf or when acting as agent, must advertise for bids, require that a bond accompany the bids, open the bids in the presence of

5

the bidders and public, and award the contract to the best and most advantageous bidder, reserving the right to reject all bids, a process referred to as "competitive bidding," *State ex rel. Leech v. Wright,* 622 S.W.2d 807, 814-815 (Tenn. 1981). A consideration of the first issue requires this Court to determine what rights these statutes confer upon participating bidders.

It is well settled that competitive bidding statutes are enacted for the purposes of providing bidders with a fair opportunity to compete for public contracts and promoting the public interest by guarding against favoritism and fraud. *Marta v. Metropolitan Government of Nashville,* 842 S.W.2d 611, 616-617 (Tenn. App. 1992). A participating bidder has the right to have its bid considered honestly and fairly, competing on the same footing as all other bidders. *Computer Shoppe, Inc. v. State,* 780 S.W.2d 729, 737 (Tenn. App. 1989). This requires that all bidders be placed upon the same plane of equality and that they each bid upon the same terms and conditions involved in all the items and parts of the contract and that the proposal specify as to all bids the same, or substantially similar specifications. *State ex rel. Leech v. Wright,* 662 S.W.2d at 815.

The claimant had the right to prepare and submit its bid upon the same terms, conditions, plans and specifications relied upon by all other bidders on this project, and prior to bidding, Chris-Hill was entitled to have the same information regarding the requirements of the contract that was given to Dement.

In the Section (N) averments, Chris-Hill alleges that it was denied its rights under the competitive bidding statute because, after the contract was awarded, TDOT allowed the successful bidder, Dement, to deviate from the plans and specifications in the actual construction of the project. Three deviations were specifically alleged by the claimant:

6

1.  TDOT allowed Dement to place a crane on the existing bridge in order to drive sheet metal and concrete pilings.

2.  TDOT entered a supplemental agreement with Dement providing for payment of $150 for each of sixty-eight seismic piling connections.

3.  TDOT allowed Dement to use only one row of sheet metal pilings in a location where the plans called for two rows.

It was admitted by the TDOT that after the contract was let, Dement was given a supplemental contract for sixty-eight seismic connections at $150 each, and that during the construction Dement was allowed to place a crane on the existing bridge. Dement complied with TDOT's order to use a double row of sheet piling after it was brought to the attention of TDOT that a single row was being used.

Chris-Hill, in its complaint, referred to these "secret deviations," alleging that TDOT told Dement, before bidding, that the deviations would ultimately be allowed, and that if it had known before bidding that TDOT would ultimately allow these deviations from the plans and specifications, its bid would have been the lowest.

The State argues that a claim for deprivation of rights under the competitive bidding statutes requires Chris-Hill to prove that TDOT assured Dement that it would be allowed to make these deviations *before* it submitted its bid.[2]

The State argues that claimant presented no direct proof that TDOT provided Dement with information prior to bidding that gave it any unfair advantage in the bidding. Bobby Garland, the TDOT employee responsible for communicating with prospective bidders about the plans and specifications, testified that he did not

---

[2]The State is not liable for ". . . willful, malicious or criminal acts by State employees, or for acts of State employees done for personal gain." T.C.A. § 9-8-307(a)(3)(d). The statutory scheme is clear that the liability of the State is bottomed on negligence, the failure to use ordinary care or to adhere to an appropriate standard of care. *See, Haynes v. Hamilton County,* 883 S.W.2d 606 (Tenn. 1994).

discuss the issues of placing a crane on the existing bridge or the number of rows of sheet piling required with Dement prior to the submission of bids. He also testified that, although he did discuss with Dement the issue of whether seismic connections were required, he did not tell Dement *before* the bidding that it would be allowed a supplemental agreement to pay for seismic connections.

The claimant relies on the fact that after the contract was awarded, Dement was allowed to deviate from the original plans and specifications, and argues that it is reasonable from that fact that Dement had been told prior to bidding that the deviations would be allowed.

It is not controverted that in most TDOT highway construction projects the contractor is allowed to deviate from the original plans and specifications in some way, a practice known to Chris-Hill because it has been allowed such deviations on its TDOT projects. We agree with the argument of the appellee that if the inference proposed by the claimant established a *prima facie* case, the unsuccessful bidder on most TDOT projects could make a claim that they had been deprived of rights under the competitive bidding statutes. Such an inference is equatable to a finding of corrupt state action, and cannot be properly considered as negligence in order to make a 307(N) case.

Without the inference, it is not seriously controverted that there is no proof in the record which would support a finding that Dement Construction Company was given an unfair advantage in the bidding on this project or that, for any reason, Chris-Hill's bid was not "fairly considered." The Commissioner's dismissal of Chris-Hill's claims under T.C.A. § 9-8-307(a)(1)(N) is not contrary to the preponderance of the evidence.

8

T.C.A. § 9-8-307(a)(1)(I) provides that the Claims Commission has jurisdiction to hear claims arising from

> Negligence in planning and programming for, inspection of, design of, preparation of plans for, approval of plans for, and construction of, public roads, streets, highways, or bridges and similar structures, designated by the Department of Transportation as being on the State system of highways or the State system of interstate highways.

The Claims Commissioner found that jurisdiction only existed under this section for Chris-Hill's claim so far as it pertained to negligence in the preparation of the plans for the project to be bid. Chris-Hill claimed that TDOT had been negligent in the preparation of the plans because there was an ambiguity in the plans regarding the use of seismic connections on the concrete pilings. The Commissioner dismissed that claim on the basis that, under this court's holding in *Computer Shoppe, Inc. v. State, supra,* the State has no duty to prospective bidders to prepare error-free plans.

Chris-Hill also argues that Section 307(a)(1)(I) authorizes claims by unsuccessful bidders against the State which allege negligence on the part of the TDOT in allowing successful bidders to deviate from the original plans and specifications. We cannot agree. The post-contract deviations were not the result of negligence and Section 307(a)(1)(I) is not implicated.

Finally, claimant argues that the Commission erred in not requiring the TDOT to produce its in-house estimate of the costs of the project. The General Assembly prohibited the publication of information which revealed the amount of available funding for any project by Chapter 1085 of the 1990 Public Acts.

The judgment is affirmed at the costs of the appellant.

_____

9

William H. Inman, Senior Judge

CONCUR:

_____
W. Frank Crawford, Judge

_____
David R. Farmer, Judge

**IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON JANUARY 1999 SESSION**

| | | |
|---|---|---|
| CHRIS-HILL CONSTRUCTION COMPANY, | ) | Tennessee Claims Commission Western Division, Claim 204648 |
| | ) | |
| Claimant/Appellant, | ) | |
| | ) | |
| v. | ) | Appeal No. 02A01-9803-BC-00057 |
| | ) | |
| STATE OF TENNESSEE, | ) | |
| | ) | |
| Defendant/Appellee. | ) | |

_____

# J U D G M E N T
_____

This cause came on to be regularly heard and considered by this Court, and for the reasons stated in the Opinion of this Court filed this date, it is ORDERED that:

1.  The judgment of the trial court is affirmed.

2.  Costs of this appeal are taxed against the appellant, Chris-Hill Construction Company, for which execution may issue if necessary.

_____
INMAN, S.J.

_____
CRAWFORD, J.


_____
FARMER, J.